UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RAYMOND C. RODRIGUES,<br><br>    Plaintiff,<br><br>v.<br><br>GENLYTE THOMAS GROUP LLC<br>d/b/a LIGHTOLIER, AND<br>KAREN PACHECO,<br><br>    Defendants. | Civil Action No. 04-11512-RBC |

**MEMORANDUM SUPPORTING GENLYTE THOMAS GROUP
LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

Plaintiff Raymond C. Rodrigues ("Rodrigues") waited more than six months after the Defendants removed this case from Bristol Superior Court and more than three months after this Court dismissed Rodrigues's claims against non-diverse Defendant Karen Pacheco ("Pacheco") before filing his present motion to remand. Rodrigues provides no explanation for his prior inaction and does not actually move for reconsideration of Pacheco's dismissal.[1] He simply contends for the first time that his naming of Pacheco as a defendant did not constitute a fraudulent joinder, so that notwithstanding the complete diversity between Rodrigues and Defendant Genlyte Thomas Group LLC ("Genlyte"),[2] this Court lacks jurisdiction over this action. Rodrigues's contention is both waived and without merit, so this Court should deny the motion to remand and retain jurisdiction under 28 U.S.C. § 1332.

---

[1]     Pacheco reserves the right to oppose such a motion, if Rodrigues ever makes one.
[2]     Genlyte denies that it does business as Lightolier. Lightolier, Inc. ceased to exist in 1991 when it merged into Genlyte Group, Inc. although the division still utilizes the "Lightolier" logo and brand on its letterhead. Then in April 1998, Genlyte Group, Inc. merged with Thomas Industries, Inc. to form Genlyte Thomas Group LLC.

## Statement Of The Case

On June 15, 2004, Rodrigues served the defendants with summonses and copies of a complaint that he filed against them in Bristol Superior Court. The Complaint consisted of three counts: sexual discrimination and harassment in violation of Mass. Gen. Laws ch. 151B, §§ 4(1) and 4(16A) ("Chapter 151B") against Genlyte; sexual harassment in violation of Mass. Gen. Laws ch. 214, § 1C ("Chapter 214") against Pacheco; and intentional interference with a contract against Pacheco. It alleged that Rodrigues was a Massachusetts resident; that Genlyte was a Delaware corporation with a principal place of business in Kentucky; and that Pacheco was a Massachusetts resident.

On July 1, 2004, the defendants filed a Notice of Removal (the "Notice") in this Court, pursuant to 28 U.S.C. §§ 1441 and 1446. See Docket No. 1. The Notice stated that this Court had subject matter jurisdiction, pursuant to 28 U.S.C. § 1332, because there was complete diversity between Rodrigues and Genlyte, and Rodrigues's naming of Pacheco as a defendant constituted a fraudulent joinder. Id. at pp. 1-2. More specifically, the Notice stated that Rodrigues could not state a cause of action against Pacheco in state court because his claims against her were preempted by Chapter 151B and Rodrigues had not complied with that statute's procedural requirements by filing an administrative charge against Pacheco with the Massachusetts Commission Against Discrimination ("MCAD"). Id. at p.2. The Notice also referenced a motion to dismiss that Pacheco was filing simultaneously. Id.

Pacheco did indeed move on July 1, 2004, to dismiss Rodrigues's claims against her, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), see Docket Nos. 2-3, while Genlyte filed an Answer that focused on Count I. See Docket No. 4. Pacheco's motion argued that

BOS_476068_1.DOC/MDUBNOFF

Rodrigues's allegations that she violated Chapter 214 (Count II) and intentionally interfered with a contract (Count III) were both grounded in a general claim of workplace sexual harassment and, therefore, were subject to Chapter 151B's exhaustion requirements. Id. at pp.3-5.

Rodrigues did not immediately file any motion to remand or opposition to Pacheco's Motion to Dismiss. On or before August 13, 2004, Rodrigues's counsel told Defendants' counsel that while he had received a copy of the Notice, he had never received Pacheco's motion. Defendants' counsel promptly faxed new copies of the motion and supporting memorandum to Rodrigues's counsel.[3] Still, Rodrigues filed no opposition. On September 18, 2004, this Court entered an order allowing Pacheco's unopposed motion to dismiss.[4]

Rodrigues has never moved for reconsideration of this order.[5] Instead, after months of silence, he filed the present motion to remand on January 21, 2005. Docket No. 15. In a supporting memorandum, Rodrigues argued that he had stated valid claims against Pacheco, thus implying that she had not been fraudulently joined as a defendant so there was no complete diversity among the parties. See generally, Docket No. 16. Rodrigues provided no explanation for why he failed to make these arguments several months earlier when they would have been timely. See generally id.

On January 25, 2005, this Court held a scheduling conference at which the motion to remand was discussed. This Court expressed concern about plaintiff's delay in filing his motion, but also raised two questions for Genlyte: (1) whether diversity jurisdiction

---

[3] A copy of that facsimile transmission is attached hereto as Exhibit 1.
[4] A copy of Judge Wolf's electronic order is attached hereto as Exhibit 2.
[5] Indeed, he has not even actively pursued his surviving claim against Genlyte. Rodrigues has yet to serve Genlyte with discovery requests and his failure to comply with Genlyte's discovery requests resulted in this Court granting Genlyte's Motion to Compel. See Docket No. 12.

BOS_476068_1.DOC/MDUBNOFF

is determined at the time a complaint is filed, and (2) whether stating that Pacheco was "fraudulently joined" to defeat diversity is qualitatively different than stating that Rodrigues's complaint did not state a valid cause of action against her. This memorandum answers those questions and addresses other matters relating to the motion to remand.

## Argument

A.  **A Plaintiff's Joinder Of Non-Diverse Defendants Is Considered "Fraudulent" If The Plaintiff Has Failed To State A Viable Cause Of Action Against Them.**

"It is beyond debate that a non-resident defendant may remove a civil case, at law or in equity, from a state court to a United States district court if the case presents a controversy between citizens of different states and involves the requisite jurisdictional amount." Carey v. Board of Governors of the Kernwood Country Club, 337 F. Supp. 2d 339, 341 (D. Mass. 2004). In determining whether complete diversity exists, courts must examine the plaintiff's pleading at the time the petition for removal is filed. Id.; Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (citing Pullman Co. v. Jenkins, 305 U.S. 534, 537 (1939)). The right of removal "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Mills, 178 F. Supp. 2d at 4 (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).

"A joinder is considered fraudulent if it is a sham and a device used to join a party 'without any reasonable basis and fact and without any purpose to prosecute the cause in good faith.'" Carey, 337 F. Supp. 2d at 341 (quoting Wilson, 257 U.S. at 98). "The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Carey, 337 F. Supp. 2d at 341-342; Mills, 178 F.

Supp. 2d at 4.  The analysis is similar to that used for a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  See Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) (stating that a finding of fraudulent joinder "bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant.").

Indeed, the word "fraudulent" in "fraudulent joinder" is somewhat imprecise, because there is no requirement that the plaintiff intended to mislead anyone regarding the joinder of the non-diverse defendant.  Courts in this district repeatedly have described "fraudulent joinder" as "a term of art used to describe not only the deceptive practice of joining a resident defendant solely to defeat diversity, but also an *improper* joinder and does not necessarily mean that the Plaintiff acted to mislead or deceive."  Carey, 337 F. Supp. 2d at 341 n.1 (emphasis added).  See also Coughlin v. Nationwide Mut. Ins. Co., 776 F. Supp. 626, 628 n.3 (D. Mass. 1991) (same); Longden v. Philip Morris, Inc., No. Civ. 03-353-M, 2003 WL 21975365, *3 (D.N.H. Aug. 19, 2003) (stating that fraudulent joinder applies when the plaintiff "simply has no chance of success, whatever the plaintiff's motives").  As a result, several courts have noted the similarity of the fraudulent joinder standard to that used with respect to a Rule 12(b)(6) motion.  Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004); Sessions v. Chrysler Corp., 517 F.2d 759, 760-61 (9th Cir. 1975).  Applying this standard, courts have held joinders to be fraudulent where the plaintiff could not state a viable cause of action against the non-diverse defendants.  See, e.g., Carey, 337 F. Supp. 2d at 343; Mills, 178 F. Supp. 2d at 9; Coughlin, 776 F. Supp. at 628.

One difference between the analysis of a claim for fraudulent joinder and that for a Rule 12(b)(6) motion is that with regard to the former, "a court is not held captive by the allegations in the complaint." Mills, 178 F. Supp. 2d at 5. "The Court may also examine affidavits of the parties in determining the propriety of joinder." Id. However, in response to this Court's inquiry, there is little else that is different qualitatively in this case between stating that Pacheco was "fraudulently joined" to defeat diversity and stating that Rodrigues's Complaint did not state a valid cause of action against her. By demonstrating that Rodrigues did not state a valid cause of action against Pacheco, the defendants have demonstrated that she was fraudulently joined a defendant.

**B.     Rodrigues Has Waived Any Challenge The Court's Dismissal Of Pacheco.**

Rodrigues's motion to remand is based on his claim that there is no diversity jurisdiction because his claims against Pacheco should not have been dismissed. See generally Docket Nos. 15-16. Rodrigues, however, never filed an opposition to Pacheco's motion to dismiss. Under Local Rule 7.1(B)(2), he was required to do so "within fourteen (14) days after service of the motion … regardless of the use of the mails." L.R. 7.1(B)(2). See also Cook v. McLaughlin, 917 F. Supp. 79, 81 (D. Mass. 1996) (enforcing rule); Florida Realty Trust v. FDIC, 871 F. Supp. 85, 87-88 & n. 3 (D. Mass. 1994) (same).

This means that since Pacheco served Rodrigues with her motion on July 1, 2004, Rodrigues's deadline for filing an opposition was July 15, more than six months before he filed this motion to remand.[6] Rodrigues missed this deadline. Indeed, Rodrigues

---

[6] Even if Rodrigues did not receive a copy of Pacheco's motion when he received the Notice of Removal and could be excused for not requesting a copy, but see Cronin v. Commonwealth, No. Civ. A. 03-11749-RGS, 2004 WL 224565, *1 (D. Mass. Feb. 5, 2004) (stating that "[a] litigating attorney has a duty to monitor the progress of his case on the court's docket and cannot delegate that responsibility to the

never even moved for reconsideration of the Court's September 18 Order allowing the motion to dismiss. Were Rodrigues to seek such relief, this Court would want to consider, among other things: (1) the reason for Rodrigues's tardiness in opposing to Pacheco's motion to dismiss; (2) the degree of prejudice that allowing a motion to reconsider would cause to Pacheco; (3) whether the belated filing would be "more than an empty exercise;" and (4) the Court's "institutional interest in preserving the integrity of its rules of procedure." Cronin v. Commonwealth, 2004 WL 224565, at *1. See also United States v. Roberts, 978 F.2d 17, 21-22 (1st Cir. 1992) (listing seven factors that district courts should examine when deciding whether to grant a motion for reconsideration). So far, Rodrigues has not even tried to explain how his tardiness can be described as "excusable neglect." Roberts, 978 F.2d at 22. For that reason alone, any motion for reconsideration should be denied.

Additionally, allowing Rodrigues to revive his claims against Pacheco would, by definition, prejudice her interests, and more importantly be an "empty exercise." See Part C, infra. Moreover, it would effectively render Local Rule 7.1(B)(2) meaningless. As the First Circuit has noted, a court "has a significant interest in the punctilious observation and strict enforcement of its procedural rules, including temporal requirements." Roberts, 978 F.2d at 23. "Valid local rules are an important vehicle by which courts operate." Cronin, 2004 WL 224565, at *1 (citation omitted). Rule 7.1(B)(2) is one such "important vehicle" and should be enforced in this case. Rodrigues's motion to remand should be denied for the simple reason that he has waived

---

court or to opposing counsel"), there can be no disputing that Rodrigues received a copy of Pacheco's motion on August 13. At the latest, therefore, his deadline for filing an opposition was August 27, 2004. L.R. 7.1(B)(2).

BOS_476068_1.DOC/MDUBNOFF

any right to challenge Pacheco's dismissal from this case and there is undisputed complete diversity between him and Genlyte.

C.  **The Court's Dismissal Of Pacheco Was Proper On The Merits.**

Even if Rodrigues had not waived his right to challenge Pacheco's dismissal, any such challenge should be denied on the merits. As set forth fully in Pacheco's memorandum supporting her motion to dismiss, Rodrigues's claims against her are both grounded in claims governed by Chapter 151B, and Rodrigues failed to exhaust his administrative remedies against Pacheco as required by that statute. Docket No. 3 at pp. 3-5. Although Rodrigues did file an MCAD charge against Genlyte, the charge did not name Pacheco as a respondent. As a result, Pacheco had no notice that she might face liability and no opportunity for reconciliation at the MCAD. This precludes Rodrigues from suing her under Chapter 151B. See Chapter 151B, § 9 (setting forth exhaustion requirement); Green v. Wyman-Gordon Co., 422 Mass. 551, 555-557 (1996) (enforcing it); Wong v. City of Cambridge, No. 2001-2737-C, 2003 WL 1542117, *4 (Mass. Super. Feb. 21, 2003) (same).

None of the cases cited by Rodrigues suggest a contrary result. Indeed, in Chatman v. Gentle Dental Center of Waltham, 973 F. Supp. 228, 236 (D. Mass. 1997), the Court affirmed the principle that the purpose of Chapter 151B's exhaustion requirement was to provide parties named in the charge with notice of the charge and an opportunity to conciliate it. In Chatman, a woman sued her former employer and several individuals for sexual harassment and discrimination based on race and gender, in violation of Chapter 151B. See 973 F. Supp. at 229-230. The woman had previously filed an MCAD charge that named only the employer as a respondent but included

specific references to the alleged misconduct by the individual defendants. Id. at 231-232. The individual defendants moved to dismiss the lawsuit on the grounds that the plaintiff had not exhausted her administrative remedies as to them. Id. at 232-233. The Court granted their motion. Id. at 236.

In so doing, the Court noted that "[n]either the Massachusetts Supreme Judicial Court nor any Massachusetts appellate court had laid out the precise contours of the kind of identification of the alleged wrongdoer that must be made in a charge filed in the MCAD in order to preserve a later civil action against that person in court." Id. at 233. But it held that the plaintiff at least had to allege in her complaint that the individual defendants had received notice of the MCAD charge and had been given an opportunity to conciliate that charge. Id. at 235-236. The complaint in Chatman did not include any such allegations. Id. at 236. Nor did, or could, Rodrigues's complaint. Following Chatman, therefore, would lead to the dismissal of Rodrigues's claims against Pacheco.[7]

Rodrigues cannot evade Chapter 151B's procedural requirements by recasting his claims against Pacheco as other forms of tortious conduct. See Green, 422 Mass. at 555-557 (specifically rejecting argument that Chapter 214 invests Superior Courts with jurisdiction to consider non-exhausted claims of workplace sexual harassment); Dorn v. Astra USA, 975 F. Supp. 388, 395 (D. Mass. 1997) (dismissing claim for intentional interference with contractual relations, among other claims, which was grounded in the

---

[7] Also unhelpful to Rodrigues is King v. First, 46 Mass. App. Ct. 372 (1999), in which the court expressly chose not to decide whether an individual could be sued for employment discrimination if he or she was not expressly named as a respondent in an MCAD charge. Meanwhile, LeClerc v. Interstate Distribution, Inc., No. 97-2008, 1998 WL 1181250 (Mass. Super. Feb. 11, 1998), is inconsistent with Riebold v. Eastern Cas. Ins. Co., 1997 WL 3115253, *5 (Mass. Super. June 4, 1997) ("Because the MCAD complaint failed to identify [two individuals] in the indicated box, 'appropriate identification' [of them] was not set forth," even if those persons were referred to in the "particulars" section of the charge).

plaintiffs' general claims of sexual harassment). The cases cited by Rodrigues in his motion to remand are not to the contrary. For example, in Comey v. Hill, 387 Mass. 11 (1982), the plaintiff's claim of unlawful interference with an advantageous relationship was asserted against an entity other than his employer and was, therefore, not grounded in a claim of employment discrimination. Comey, 387 Mass. at 19. Meanwhile, Charland v. Muzi Motors, Inc., 417 Mass. 580 (1994), actually supports Pacheco's position that Chapter 151B preempts other causes of action grounded in claims of employment discrimination. See Charland, 417 Mass. at 582-584. See also Melley v. Gillette Corp., 19 Mass. App. at 511, 511 (1985) (holding that a plaintiff may not bypass the procedural provisions of Chapter 151B by describing his claim as one for wrongful termination in violation of public policy). O'Connell v. Chasdi, 400 Mass. 686 (1987), is not even on point because the issue in that case was whether the plaintiff's claims for various intentional torts were precluded by the Workers' Compensation Act, not Chapter 151B. See id. at 694.

In sum, the case law establishes that even if Rodrigues had not waived his claims against Pacheco – which he did – dismissal would have been proper on the merits.

BOS_476068_1.DOC/MDUBNOFF

## Conclusion

For all the foregoing reasons, this Court should deny Rodrigues's Motion to Remand.

Respectfully Submitted,

GENLYTE THOMAS GROUP LLC,
By its attorneys

/s/ Mark B. Dubnoff
Timothy P. Van Dyck (BBO# 548347)
Mark B. Dubnoff (BBO# 637212)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110
(617) 439-4444

February 8, 2005.

## CERTIFICATE OF SERVICE

I, Mark B. Dubnoff, hereby certify that on this 8th day of February, 2005, I caused a copy of the foregoing document to be sent by first-class mail, postage prepaid, to Plaintiff's counsel, Christopher Trundy, 240 Union St., P.O. Box 1203, New Bedford, MA 02741-1203.

/s/ Mark B. Dubnoff
Mark B. Dubnoff